OPINION
{¶ 1} On June 20, 1998, Jerrold Dalton was riding his motorcycle with his wife, Donna Dalton, as a passenger. An automobile driven by Connie Lechner allegedly ran a stop sign causing another vehicle to slide left of center and strike the Dalton motorcycle. As a result of the accident, Mr. Dalton died and Mrs. Dalton sustained injuries. In addition to his wife, Mr. Dalton was survived by four children, Nikole Dalton, Brian Dalton, Miranda Dalton and Ronald Dalton. Nikole, Brian and Miranda lived at the Dalton residence. Ronald, an adult, lived in a separate residence.
{¶ 2} At the time of the accident, Mr. Dalton was employed by Patriot Precision, Inc., insured under a commercial automobile policy, a general liability policy and an umbrella policy issued by appellant, Travelers Indemnity Company of Illinois.
{¶ 3} Mrs. Dalton was employed by Aultman Hospital, insured under a commercial automobile policy and an umbrella policy issued by appellant, St. Paul Fire Marine Insurance Company.
{¶ 4} The Daltons' daughter, Nikole, was employed by JK Subway, Inc. dba Subway, insured under a commercial automobile policy, a general liability policy and an umbrella policy issued by appellant, Grange Mutual Casualty Company.
{¶ 5} The Daltons' son, Brian, was employed by Canton South Car Wash, insured under a commercial automobile policy issued by appellant Grange.
{¶ 6} The Dalton's son, Ronald, was employed by Collins 
Aikman Corporation dba The Akro Corporation, insured under a commercial automobile policy and a general liability policy issued by appellee, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and an umbrella policy issued by appellee Federal Insurance Company.
On April 21, 2001, appellee, Donna Dalton, individually and as administratrix of the estate of Jerrold Dalton, deceased, filed a declaratory judgment complaint against all the insurance companies for underinsured motorist benefits.[1] An amended complaint adding the claims of the children was filed on September 25, 2001.
{¶ 7} All parties filed motions for summary judgment. By judgment entry filed November 29, 2001, the trial court found the estate, Mrs. Dalton and the three resident children were entitled to coverage under the commercial automobile policy issued by Travelers; the estate was entitled to coverage under the general liability and umbrella policies issued by Travelers; the estate, Mrs. Dalton and the three resident children were entitled to coverage under the commercial automobile policy issued by St. Paul; the estate and Mrs. Dalton were entitled to coverage under the umbrella policy issued by St. Paul; the estate, Mrs. Dalton and the three resident children were entitled to coverage under the commercial automobile policies issued by Grange; Nikole Dalton was entitled to coverage under the general liability and umbrella policies issued by Grange; Ronald Dalton was not entitled to coverage under the commercial automobile and general liability policies issued by National; and Ronald Dalton was not entitled to coverage under the umbrella policy issued by Federal. The trial court held Travelers, St. Paul and Grange were liable for payment of underinsured motorist benefits on a primary and pro rata basis.
Appellants and Ronald Dalton filed individual appeals, and appellees filed a cross-appeal against Grange. This matter is now before this court for consideration. For the sake of clarity, the arguments for each appellant will be addressed individually.
{¶ 8} The first appellant is Travelers Indemnity Company of Illinois. Its assignments of error are as follows:
 I
{¶ 9} "The trial court erred in declaring that plaintiffs Donna Dalton, the estate of Jerrold Dalton, Nikole Dalton, Miranda Dalton, and Brian Dalton are entitled to UIM Coverage under the Commercial Auto Policy issued by appellant Travelers, and in denying Travelers' motion for summary judgment on plaintiffs' claims under that policy."
 II
{¶ 10} "The trial court erred in declaring that the plaintiff estate is entitled to UIM Coverages under the commercial general liability policy issued by appellant Travelers, and in denying Travelers' motion for summary judgment on plaintiffs' claims under that policy."
 III
{¶ 11} "The trial court erred in declaring that the plaintiff estate is entitled to UIM Coverages under the commercial umbrella policy issued by appellant Travelers, and in denying Travelers' motion for summary judgment on plaintiffs' claims under that policy."
 I, II, III
{¶ 12} Travelers claims the trial court erred in finding underinsured motorist coverage under the commercial automobile policy, the general liability policy and the umbrella policy under the theory of Scott-Pontzer v. Liberty Mutual Fire Insurance Co., 85 Ohio St.3d 660,1999-Ohio-292, and Selander v. Erie Insurance Group, 85 Ohio St.3d 541,1999-Ohio-287. The trial court found the estate, Mrs. Dalton and the three resident children were entitled to coverage under the commercial automobile policy and the estate was entitled to coverage under the general liability and umbrella policies.
 COMMERCIAL AUTOMOBILE POLICY
{¶ 13} The commercial automobile policy issued to Mr. Dalton's employer contained express uninsured/underinsured motorist coverage. The trial court found said coverage provisions were ambiguous in defining an "insured" and therefore coverage existed by operation of law pursuant to Scott-Pontzer.
{¶ 14} The uninsured/underinsured motorist provisions define an "insured" as follows:
{¶ 15} "1. You.
{¶ 16} "2. If you are an individual, any `family member.'
{¶ 17} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' * * *
"4. Anyone else for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'" See, Section B of the Ohio Uninsured Motorists Coverage, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit B-16.
{¶ 18} The policy states "the words `you' and `your' refer to the Named Insured shown in the Declarations." See, Business Auto Coverage Form, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit B-5. The named insureds listed in the declarations page are "RRR Development Co. Inc., Patriot Precision, US Automation Sales Co. Inc., Ron Jackie Dillard." See, Named Insured, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit B-2.[2]
{¶ 19} Presuming the "you" is determined to be ambiguous, we find no coverage to appellees for the following reasons.
{¶ 20} Because the commercial automobile policy has express uninsured/underinsured motorist coverage pursuant to R.C. 3937.18, said coverage does not arise by operation of law. As a result, if appellees are "insureds" under the policy, they must meet the contractual obligations of prompt notice and protection of subrogation rights.
{¶ 21} We note in Burkhart, supra, this court found the subrogation and notice provisions to be unenforceable. However, this court recently found the Burkhart case to have been decided in error regarding this issue. See, Szekeres v. State Farm Fire and Casualty Company, Licking App. No. 02CA00004, 2002-Ohio-5989, at 6-7.[3]
The policy sub judice contains the following provisions:
{¶ 22} "Promptly send us copies of the legal papers if a `suit' is brought." See, Section E(2)(b) of the Ohio Uninsured Motorists Coverage — Bodily Injury Policy, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit B-17.
{¶ 23} "A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in paragraph F.3.b of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b the definition of `uninsured motor vehicle'." See, Section E(2)(c) of the Ohio Uninsured Motorists Coverage — Bodily Injury Policy, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit B-17.
{¶ 24} Under the clear mandate of Bogan v. Progressive Casualty Insurance Co. (1988), 36 Ohio St.3d 22, paragraph four of the syllabus, subrogation provisions are enforceable in uninsured/underinsured motorist claims:
{¶ 25} "Based upon the established common law and further strengthened by the specific statutory provision, R.C. 3937.18, a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such a clause is therefore both a valid and enforceable precondition to the duty to provide underinsured motorist coverage."
{¶ 26} Appellees settled with the tortfeasor on July 8, 1999 without notifying Travelers.
Based upon the subrogation provisions which are enforceable contract conditions of the commercial automobile policy, uninsured/underinsured motorist coverage, we find appellees are not entitled to coverage under the commercial automobile policy issued by Travelers.
 GENERAL LIABILITY POLICY
{¶ 27} Travelers argues Mr. Dalton was not insured under the general liability policy except while acting in the scope of employment, and said policy is not a motor vehicle policy subject to the mandates of R.C. 3937.18(A).
{¶ 28} The declarations page of the general liability policy lists the companies and individuals as named in the commercial automobile policy. See, Named Insured, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit C-4. The policy defines an "insured" as follows:
{¶ 29} "1. If you are designated in the Declarations as:
{¶ 30} "a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
{¶ 31} * * *
{¶ 32} "c. An organization other than a partnership or joint venture, you are insured. Your `executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
{¶ 33} "2. Each of the following is also an insured:
{¶ 34} "a. Your `employees,' other than your `executive officers,' but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." See, Section II of the Commercial General Liability Policy, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit C-12.
Mr. Dalton does not meet the definitions of paragraph 1. While Mr. Dalton was an employee of a named insured, Patriot Precision, Inc., he was not acting within the scope of his employment at the time of the accident and therefore does not meet the definition of paragraph 2.
{¶ 35} Because Mr. Dalton is not a named insured under the policy, his estate is not entitled to coverage under the general liability policy issued by Travelers.
{¶ 36} We further find the policy is not a motor vehicle policy subject to R.C. 3937.18.
{¶ 37} The trial court concluded the policy was a motor vehicle policy pursuant to Selander, supra. Travelers argues the policy is not a motor vehicle policy and cites Davidson v. Motorists Mutual Insurance Co., 91 Ohio St.3d 262, 2001-Ohio-36, in support. The Davidson case involved R.C. 3937.18 coverage under a homeowner's policy. Writing for the court, Justice Francis Sweeney, who also wrote Selander, explained Selander as follows:
{¶ 38} "Moreover, we never intended Selander to be used to convert every homeowner's policy into a motor vehicle liability policy whenever any incidental coverage is afforded for some specified type of motorized vehicle. Instead, Selander stands only for the proposition that UM/UIM coverage is to be offered where a liability policy of insurance expressly provides for coverage for motor vehicles without qualification as to design or necessity for motor vehicle registration." Davidson at 268.
{¶ 39} Travelers points to the following exclusion as to automobiles:
{¶ 40} "This insurance does not apply to:
"`Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and `loading and unloading.'
{¶ 41} "This exclusion does not apply to:
{¶ 42} * * *
{¶ 43} "(3) Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured." See, Section I, Coverage A(2)(g) of the Commercial General Liability Policy, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit C-8-C-10.
{¶ 44} As noted, the policy contains a "valet parking" provision. We find the following discussion from Szekeres at 9-10 to be applicable sub judice:
"Per Davidson, such a provision is not truly a motor vehicle provision but a property damage provision. The provision does not pertain to any motor vehicle operation, but to coverage of the automobile body itself. We find to magnify this provision to the point that it would transform a general liability policy into a motor vehicle policy is to step beyond the pale.[4] We have steadfastly rejected extensions of Scott-Pontzer in other areas such as residence employee provisions in homeowner's policies (Vohsing v. Auto-Owners Insurance Co., Licking App. No. 01-CA-56, 2002-Ohio-250, Mattox v. Allstate Insurance Co., Stark App. No. 2001CA218, 2002-Ohio-1453, Henry v. Nationwide Mutual Fire Insurance Co., Muskingum App. No. CT2001-0014, 2001-Ohio-1427) and we find this analysis to be of the same nature. The general liability policy is not a motor vehicle policy and therefore is not covered by R.C. 3937.18."
{¶ 45} Based upon the definition of an "insured" in the policy and given the fact the general liability policy is not a motor vehicle policy, we find appellees are not entitled to coverage under the general liability policy issued by Travelers.
 UMBRELLA POLICY
{¶ 46} Travelers argues Mr. Dalton was not an "insured" under the umbrella policy.
{¶ 47} At the outset, we note the umbrella policy specifically excluded uninsured/underinsured motorist coverage by way of endorsement. See, Endorsement No. UM 01 89 04 96, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit D-14.
{¶ 48} The definition of "Who Is An Insured" states as follows in pertinent part:
{¶ 49} "2. Each of the following is also an insured:
{¶ 50} "a. As respects the `auto hazard':
{¶ 51} "(1) Anyone using an `auto' you own, hire or borrow including any person or organization legally responsible for such use provided it is with your permission; and
{¶ 52} "(2) Any of your executive officers, directors, partners, employees or stockholders, operating an `auto' you do not own, hire or borrow while it is being used in your business." See, Section II(2) of the Commercial Excess Liability (Umbrella) Insurance, attached to Opening Brief of Appellant Travelers Indemnity Company of Illinois as Exhibit D-5.
As an employee, Mr. Dalton is covered under the policy for operating a personal "auto" "while it is being used in your business." At the time of the accident, Mr. Dalton was not operating an "auto" "while it is being used in your business" therefore, Mr. Dalton is not an insured under the umbrella policy and is not entitled to coverage under same.
{¶ 53} Upon review, we find no coverage to appellees under any of the policies issued by Travelers.
{¶ 54} Travelers Assignments of Error I, II and III are granted.
{¶ 55} The second appellant is Grange Mutual Casualty Company. Its assignments of error are as follows:
 I
{¶ 56} "The trial court erred as a matter of law in finding that plaintiffs were entitled to underinsured motorist coverage under the Grange Commercial Auto Policy issued to J K Subway, Inc., No. GLA 2112530."
 II
{¶ 57} "The trial court erred as a matter of law in finding that plaintiffs were entitled to Underinsured Motorist Coverage under the Grange Commercial Package Policy issued to Canton South Car Wash, No. CPP 2167926."
 III
"The trial court erred as a matter of law in finding that Nikole Dalton is entitled to Underinsured Motorist Coverage under the Grange Commercial Businessowners Policy issued to J K Subway, Inc. Joe Nonnamaker Kristine Nonnamaker. No. BP-2109092."
 IV
{¶ 58} "The trial court erred as a matter of law in finding that Nikole Dalton is entitled to Underinsured Motorist Coverage under the Grange Commercial Umbrella Policy issued to J K Subway, Inc. Joe Nonnamaker Kristine Nonnamaker, No. CUP-2096885."
 V
{¶ 59} "The trial court erred as a matter of law in finding that Grange owed primary and pro rata insurance with Travelers and St. Paul."
 VI
{¶ 60} "The trial court erred in failing to determine the amount of coverage available to plaintiffs under all the policies in Issue."
{¶ 61} Appellees Estate of Jerrold Dalton, Donna Dalton, Miranda Dalton and Brian Dalton filed the following cross-assignment of error against appellant Grange:
 CROSS-ASSIGNMENT OF ERROR I
{¶ 62} "The trial court erred in holding that UM/UIM coverage, imposed by law as part of an excess liability/umbrella policy, does not insure the same persons insured by the underlying commercial automobile policy."
 I, II, III, IV
Grange claims the trial court erred in finding underinsured motorist coverage under the policies. The trial court found the estate, Mrs. Dalton and the three resident children were entitled to coverage under the commercial automobile policies and Nikole Dalton was entitled to coverage under the general liability and umbrella policies.
 COMMERCIAL AUTOMOBILE POLICY — SUBWAY
{¶ 63} The commercial automobile policy issued to Nikole's employer contained express uninsured/underinsured motorist coverage. The trial court found said coverage provisions were ambiguous in defining an "insured" and therefore coverage existed by operation of law pursuant to Scott-Pontzer.
{¶ 64} The uninsured/underinsured motorist provisions defining an "insured" are identical to the provisions cited supra under the Travelers commercial automobile policy. See, Section B of the Ohio Uninsured Motorists Coverage, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 2. The named insured is listed as "JK Subway, Inc." See, Named Insured, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 2.
Pursuant to Scott-Pontzer, Nikole Dalton is an insured under the uninsured/underinsured motorists provisions of the policy. Because Nikole is an insured individual via Scott-Pontzer, her family members residing in her household are also insureds given that the policy defines "family member" as "a person related to you by blood, marriage, or adoption who is a resident of your household, including a ward or foster child." See, Section F of the Ohio Uninsured Motorists Coverage, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 2. We note uninsured/underinsured motorist coverage is not "created" by operation of law because said coverage already exists. We will look to the existing policy to determine the next issue.
{¶ 65} Grange argues appellees have violated the conditions of the policy i.e., consent to settle, contractual time limit, statute of limitations and prompt notice requirements. As stated in the Travelers's discussion, appellees are bound to the conditional provisions of the policy.
{¶ 66} The uninsured/underinsured motorist policy sub judice contains the identical subrogation provision cited supra under the Travelers commercial automobile policy. See, Section E(2)(c) of the Ohio Uninsured Motorists Coverage — Bodily Injury Policy, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 2.
{¶ 67} Again, we note appellees settled with the tortfeasor on July 8, 1999 without notifying Grange.
{¶ 68} Based upon the subrogation provisions which are enforceable contract conditions of the commercial automobile policy, we find appellees are not entitled to coverage under the Subway commercial automobile policy issued by Grange.
 GENERAL LIABILITY POLICY — SUBWAY
The declarations page of the general liability policy lists the "insureds" as "JK Subway, Inc." and "Joe Nonnamaker and Kristine Nonnamaker and William A. Nonnamaker." See, Named Insured and Schedule of Additional Names, attached to attached to Grange's October 9, 2001 Motion for Summary Judgment as Exhibit B. The policy provisions defining an "insured" are almost identical to the provisions cited supra under the Travelers general liability policy. See, Endorsement BP 00 06 12 92 at Section C, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 3.
{¶ 69} Nikole Dalton does not meet the definitions of an insured under the policy. Because Nikole is not a named insured under the policy, she is not entitled to coverage under the general liability policy issued by Grange. Furthermore, the policy is not a motor vehicle policy subject to R.C. 3937.18 as discussed supra.
 UMBRELLA POLICY — SUBWAY
{¶ 70} Grange argues Nikole Dalton was not an "insured" under the umbrella policy.
{¶ 71} At the outset, we note uninsured/underinsured motorist coverage arises under the umbrella policy by operation of law.[5]
{¶ 72} The definition of "Who Is An Insured" states as follows in pertinent part:
{¶ 73} "2. Except with respect to:
{¶ 74} "i. any `auto'; or
{¶ 75} "ii. `mobile equipment' registered in your name under any motor vehicle registration law;
{¶ 76} "Each of the following is also an insured;
"a. Your `employees', other than either your `executive officers' (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." See, Section III(2) of the Commercial Umbrella Policy, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 4.
{¶ 77} Based upon this definition, Nikole, being an employee, is an insured "but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." Does this restriction apply sub judice? We answer in the negative for the following reasons.
{¶ 78} In Scott-Pontzer, the Supreme Court of Ohio reviewed an umbrella/excess policy which included "scope of employment" language. The court found uninsured/underinsured motorist coverage by operation of law and disregarded any restrictions therein:
{¶ 79} "On the other hand, Liberty Mutual's umbrella/excess insurance policy did restrict coverage to employees acting within the scope of their employment. However, we have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage. See, e.g., Demetry v. Kim (1991), 72 Ohio App.3d 692, 698, 595 N.E.2d 997, 1001. Therefore, there is no requirement in the umbrella policy that Pontzer had to be acting during the scope of his employment to qualify for underinsured motorist coverage. Therefore, appellant is entitled to underinsured motorist benefits under the Liberty Mutual umbrella policy as well." Scott-Pontzer at 666.
The policy sub judice contains a very similar restriction. Clearly, the Scott-Pontzer court held such a restriction would not be read into an operation of law uninsured/underinsured motorist coverage scenario and found the restriction to be inapplicable.
{¶ 80} Using the Supreme Court of Ohio's reasoning in Scott-Pontzer, we find Nikole is entitled to coverage under the umbrella policy issued by Grange, but only in excess of the commercial automobile policy limits ($500,000) based upon the following pertinent language in the umbrella policy:
{¶ 81} "1. Insuring Agreement
{¶ 82} "a. We will pay on behalf of the insured the `ultimate net loss' in excess of the `retained limit' because of `bodily injury' or `property damage' to which this insurance applies." See, Section 1, Coverage A(1)(a) of the Commercial Umbrella Policy, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 4.
{¶ 83} "Retained limit" is defined in the policy as follows:
{¶ 84} "20. Retained limit: means the greater of:
{¶ 85} "a. The sum of amounts applicable to any `claim' or `suit' from:
{¶ 86} "(1) `Underlying insurance' whether such `underlying insurance' is collectible or not; and
{¶ 87} "(2) Other collectible primary insurance; or
{¶ 88} "b. The `self-insured retention'." See, Section VI(20) of the Commercial Umbrella Policy, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 4.
{¶ 89} We distinguish this umbrella policy from the Travelers umbrella policy because the Grange umbrella coverage arose by operation of law and the Travelers policy specifically excluded uninsured/underinsured motorist coverage.
Upon review, we find no coverage to Nikole and her family members under the Subway commercial automobile and general liability policies issued by Grange, but do find coverage to Nikole under the umbrella policy issued by Grange in excess of the commercial automobile policy limits.
 COMMERCIAL AUTOMOBILE POLICY — CAR WASH
{¶ 90} The commercial automobile policy issued to Brian's employer contained express uninsured/underinsured motorist coverage. The trial court found said coverage provisions were ambiguous in defining an "insured" and therefore coverage existed by operation of law pursuant to Scott-Pontzer.
{¶ 91} The uninsured/underinsured motorist provisions defining an "insured" are identical to the provisions cited supra under the Subway commercial automobile policy. See, Section B of the Ohio Uninsured Motorists Coverage, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 5. The named insured is listed as "Canton South Car Wash, Inc." See, Named Insured, attached to Brief of Appellant Grange Mutual Casualty Company as Exhibit 5.
{¶ 92} Pursuant to Scott-Pontzer, Brian Dalton and his "family members" residing in his household are insureds under the uninsured/underinsured motorists provisions of the policy.
{¶ 93} Looking to the existing uninsured/underinsured motorist coverage, we find the same arguments involving the conditional provisions in the Subway policy apply here. Because of the subrogation provisions of the policy, appellees are not entitled to coverage under the Canton South Car Wash commercial automobile policy issued by Grange.
 PRIMARY AND PRO RATA
Grange claims the trial court erred in finding it owed primary and pro rata insurance with Travelers and St. Paul.
{¶ 94} Because we have found coverage to Nikole under the Grange umbrella policy in excess of the commercial automobile policy limits and coverage to Nikole under the St. Paul policies infra, we find Grange's coverage is pro rata, not primary. See, Buckeye Union Insurance Co. v. State Auto Insurance Co. (1977), 49 Ohio St.2d 213.
{¶ 95} Grange's Assignments of Error I, II, III and V are granted. Assignment of Error IV is denied. Assignment of Error VI is moot.
 CROSS-ASSIGNMENT OF ERROR I
{¶ 96} Appellees claim the trial court erred in finding Nikole was insured under the umbrella policy but her family members were not.
{¶ 97} In deciding who is an "insured" under a policy, one must look to the policy at issue. In the case sub judice, the policy at issue was the umbrella policy, not the underlying commercial automobile policy. As cited supra, the umbrella policy issued by Grange covers Nikole as an "employee." The policy does not contain any language referencing family members. Therefore, the trial court did not err in finding Nikole's family members were not "insureds" under the umbrella policy issued by Grange.
{¶ 98} Cross-Assignment of Error I is denied.
{¶ 99} The third appellant is St. Paul Fire Marine Insurance Co. Its assignment of error is as follows:
 I
"The trial court erred in denying appellant St. Paul and Marine Insurance Company's motion for summary judgment and in granting plaintiffs'-appellees'/cross-appellants' motion for summary judgment."
 I
{¶ 100} St. Paul claims the trial court erred in finding underinsured motorist coverage under the policies. The trial court found the estate, Mrs. Dalton and the three resident children were entitled to coverage under the commercial automobile policy and the estate and Mrs. Dalton were entitled to coverage under the umbrella policy.
 COMMERCIAL AUTOMOBILE AND UMBRELLA POLICIES
{¶ 101} The commercial automobile policy issued to Mrs. Dalton's employer contained express uninsured/underinsured motorist coverage. The trial court found said coverage provisions were ambiguous in defining an "insured" and therefore coverage existed by operation of law pursuant to Scott-Pontzer.
{¶ 102} The uninsured/underinsured motorist provisions define an "insured" as follows:
{¶ 103} "Individual. You are protected. Also, if you are named in the Introduction as an individual, you and your family members are protected persons.
{¶ 104} "Family members means persons who are related to you by blood, marriage or adoption and live in your home. A ward or foster child who lives with you is also considered to be a family member.
{¶ 105} "Anyone else in a covered auto. Anyone else while in an auto that's a covered auto or a temporary substitute auto is protected.
{¶ 106} "* * *
"Anyone entitled to collect damages. We'll also cover anyone entitled to collect damages for bodily injury suffered by another protected person." See, Form 44086 at 3 of the Uninsured and Underinsured Motorists Protection — Ohio, attached to St. Paul's September 24, 2001 Motion for Summary Judgment as Exhibit C.
{¶ 107} The named insureds in the Introduction are corporate entities. See, Introduction, attached to St. Paul's September 24, 2001 Motion for Summary Judgment as Exhibit C.
{¶ 108} Pursuant to Scott-Pontzer, Mrs. Dalton is an insured under the uninsured/underinsured motorists provisions of the policy. Because Mrs. Dalton is an insured individual via Scott-Pontzer, her family members residing in her household are also insureds given the definition supra. We will look to the existing policy to determine the next issue.
{¶ 109} St. Paul, as did Grange, argues appellees violated the conditions of the policy. We have determined supra that the conditional provisions provided within the uninsured/underinsured motorist policy apply to the insureds.
{¶ 110} The policy sub judice contains the following subrogation provision:
{¶ 111} "In the case of a settlement between a protected person and an insurer of an underinsured vehicle, the protected person must promptly notify us in writing of the settlement. Then we must be allowed 30 days to pay the amount of the settlement to the protected person. This will preserve our right of recovery." See, Form 44086 at page 5 of the Uninsured and Underinsured Motorists Protection — Ohio, attached to St. Paul's September 24, 2001 Motion for Summary Judgment as Exhibit C.
Although appellees settled with the tortfeasor on July 8, 1999 without notifying St. Paul, we find this provision to be distinguishable from the subrogation provision in the Grange policy. The Grange provision required prompt notification of a tentative settlement so that Grange could advance payment in an amount equal to the tentative settlement to preserve its rights against the insurer or owner or operator of the uninsured/underinsured vehicle. The St. Paul provision references a settlement and merely requires prompt notification of the settlement. It is simply an advancement of monies provision.
{¶ 112} We find the subrogation provision does not preclude coverage. Appellees are entitled to underinsured motorist coverage under the commercial automobile policy issued by St. Paul.
{¶ 113} Because appellees are entitled to coverage under the commercial automobile policy, the umbrella policy, as excess coverage, applies. See, Form 47272 at pages 3 and 7 of the Umbrella Excess Liability Protection Policy, attached to St. Paul's September 24, 2001 Motion for Summary Judgment as Exhibit D. Appellees entitled to coverage include the estate, Mrs. Dalton and the three resident children as the umbrella coverage defines a "protected" person as "[a]ny person or organization who is a protected person under your automobile Basic Insurance for the use of an auto is a protected person under this agreement." Id. at page 7. Because Mrs. Dalton and her family members are protected persons under the commercial automobile policy, they are all protected persons under the umbrella policy by definition.
{¶ 114} St. Paul's sole assignment of error is denied.
{¶ 115} We will now address the appeal of Ronald Dalton. His assignments of error are as follows:
 I
"The trial court erred as a matter of law in finding Ronald Dalton was not entitled to Scott-Pontzer coverage under his employer's insurance policies for damages sustained as a result of his father's wrongful death because, in conjunction with the Supreme Court's decisions in Sexton and Moore, Scott-Pontzer entitled him to such coverage."
 II
{¶ 116} "The trial court erred as a matter of law in denying UM/UIM coverage to Ronald Dalton where National Union did not obtain a valid and enforceable written rejection of UM/UIM coverage from Ronald Dalton's employer."
 III
{¶ 117} "The trial court erred as a matter of law in finding that defendant National Union was self-insured, and therefore not required to offer UM/UIM coverage pursuant to R.C. § 3937.18."
{¶ 118} Ronald Dalton claims the trial court erred in finding he was not entitled to coverage under his employer's commercial automobile and general liability policies issued by National and umbrella policy issued by Federal.
 I, II, III
Ronald Dalton claims he is an insured under the National and Federal policies pursuant to Scott-Pontzer. In addition, he claims the trial court erred in finding National was self-insured and exempt from the requirements of R.C. 3937.18 and in finding a valid rejection of uninsured/underinsured motorist coverage in National's commercial automobile policy.
{¶ 119} Before undertaking a Scott-Pontzer analysis in order to determine whether Ronald Dalton is an insured under the policies, we must determine if uninsured/underinsured motorist coverage is required under the policies.
 SELF-INSURED — NATIONAL
{¶ 120} The trial court found the National policies were exempt from R.C. 3937.18 because Ronald Dalton's employer, Collins, was self-insured. Ronald Dalton argues National's policies were not fronting policies or self-insurance because National had neither a certificate of self-insurance nor a copy of an employer financial responsibility bond. National argues Collins functioned as a self-insured "in the practical sense" because Collins retained the risk of loss under the policies.
{¶ 121} In Grange Mutual Casualty Co. v. Refiners Transport and Terminal Corp. (1986), 21 Ohio St.3d 47, the Supreme Court of Ohio held self-insureds "in the practical sense" are not required to comply with R.C. 3937.18. Although the Grange court set forth the statute that establishes proof of financial responsibility (R.C. 4509.45), Chief Justice Celebrezze at 49 went on to acknowledge that a party could be self-insured without meeting the specific requirements of the statute:
"However, Refiners sought to meet its financial responsibility requirements and to protect itself from claims, in part by purchasing a financial responsibility surety bond and in part by purchasing two excess insurance policies for larger claims. As such, it was not a `self-insurer' in the legal sense contemplated by R.C. 4509.45(D) and4509.72, but rather in the practical sense in that Refiners was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim."
{¶ 122} Therefore, our inquiry is whether National's policies make the employer, Collins, ultimately responsible under the terms of the agreement. Does Collins bare the risk of loss up to the retained amounts? We answer in the affirmative for the following reasons.
Exhibits 2, 3, and 6, attached to National's September 24, 2001 Motion for Summary Judgment, are the two National policies (commercial automobile policy, No. RMCA 320-73-73, and general liability policy, No. RMGL 113-50-39, Renewal No. 1437841), a Payment Agreement and a Large Risk Rating Plan Endorsement. The commercial automobile policy has limits of $2,000,000 and the general liability policy has limits of $1,000,000. The payment agreement makes Collins responsible upon billing for each payment made under the policy, up to $500,000 for the commercial automobile policy and $1,000,000 for the general liability policy. See, Payment Agreement, Part II, Payment of Premiums, Article 1(1) and (2), and Part II, Schedule of Policies, Section 5, attached to National's September 24, 2001 Motion for Summary Judgment as Exhibit 6. In order to secure the amounts that may be paid, Collins is required to provide a promissory note and a security acceptable as collateral. See, Payment Agreement, Part II, Articles 2 and 3, attached to National's September 24, 2001 Motion for Summary Judgment as Exhibit 6. Based upon these documents, we find Collins is responsible for payments made to claimants under the policy up to the retained amounts. By agreeing to reimburse and provide a promissory note and security, Collins is self-insured up to the retained amounts because the risk of loss has not shifted away from Collins. Collins is self-insured up to $500,000 under the commercial automobile policy and up to the policy limit of $1,000,000 under the general liability policy. Collins is insured in the traditional sense for the remaining 1.5 million of the commercial automobile policy. R.C.3937.18 does not apply to Collins and the National policies up to the retained amounts, but does apply to the 1.5 million.
 REJECTION FORM — NATIONAL
{¶ 123} Ronald Dalton additionally argues that by offering uninsured/underinsured motorist coverage under the commercial automobile policy, said coverage must fall within the provisions of R.C. 3937.18. He argues National's rejection form and notice do not comply with Linko, supra.
{¶ 124} The rejection in this case is governed by the September 3, 1997 version of R.C. 3937.18. After review, we determine the rejection form conforms to the statute for the following reasons. The form, attached to National's September 24, 2001 Motion for Summary Judgment as Exhibit 7, specifically references the policy, No. RMCA 320-73-73. The rejection is within the policy and therefore the limits referenced in the form are found in the instrument as a whole. The language of the form complies with the mandates of the 1997 revision of R.C. 3937.18. We do not find this determination to be in conflict with Pillo v. Stricklin, Stark App. No. 2001CA00204, 2001-Ohio-7049, for the following reasons. The Payment Agreement, attached to National's September 24, 2001 Motion for Summary Judgment as Exhibit 6, establishes that a premium for uninsured/underinsured motorist coverage would not be available because the final payment is calculated on a "Large Risk Rating Plan Endorsement." Further, Collins would be required to pay National all reimbursable amounts according to the terms of the policy. In all other respects, the rejection form is in compliance.
Because the commercial automobile policy contains a valid rejection of uninsured/underinsured motorist coverage and the general liability policy is not required to provide such coverage, no uninsured/underinsured motorist coverage is afforded under the policies issued by National. There is no need to entertain a Scott-Pontzer analysis.
 UMBRELLA — FEDERAL
{¶ 125} Because Ronald Dalton is not entitled to uninsured/underinsured motorist coverage under National's policies, the umbrella policy does not apply.
{¶ 126} Assignments of Error I, II and III are denied.
{¶ 127} The judgment in Case No. 2001CA00380 is hereby reversed. The judgment in Case No. 2001CA00393 is hereby affirmed in part and reversed in part. The judgment in Case No. 2001CA00407 is hereby affirmed. The judgment in Case No. 2001CA00409 is hereby affirmed.
By Farmer, J. and Gwin, P.J. concurs.
Edwards, J. dissents in part.
[1] Mrs. Dalton settled with the various insurance companies insuring Ms. Lechner. Mrs. Dalton specifically settled and released "any and all claims or causes of action on behalf of myself, individually, and on behalf of the minor children and heirs" of Mr. Dalton. See, Settlement Agreement and Release of All Claims dated July 8, 1999, attached to St. Paul's September 24, 2001 Motion for Summary Judgment as Exhibit B. Mrs. Dalton signed this agreement and release in her capacity as "Executrix of the Estate of Jerrold C. Dalton, deceased and as parent and natural Guardian of the minor children and heirs of Jerrold C. Dalton." Id.
[2] This writer notes she has found when the declarations include named individuals as well as a company/corporation, the policy language is not ambiguous and therefore Scott-Pontzer does not apply. See, Pahler v. Motorist Mutual Insurance Company, Stark App. No. 2002CA00022, 2002-Ohio-5762, (Farmer, J., dissenting).
[3] We note the writer of Burkhart was on the Szekeres panel and concurred with the majority on this issue. See, Szekeres, supra, Hoffman, J., concurring in part and dissenting in part at 1-4.
[4] This writer notes a direct conflict with this court's decision in Cox v. State Farm Fire and Casualty Co., Licking App. No. 2001CA00117, 2002-Ohio-3076, which this writer wrote. Cox involved a "valet parking" provision identical to a provision reviewed in Burkhart, supra. The Burkhart court found the provision elevated the general liability policy to a motor vehicle policy, finding Selander, and not Davidson applied. This writer adopted this holding in Cox. Upon revisiting this "valet parking" provision which is identical in the case sub judice, this writer concedes error in the Cox decision and adopts the reasoning set forth above.
[5] The Rejection or Selection of Lower Limits of Uninsured Motorists Coverage (Ohio) supplied by Grange in its brief at Exhibit 7 fails to meet the requirements of Linko v. Indemnity Insurance Company of North America, 90 Ohio St.3d 445, 2000-Ohio-92, and is pre-H.B. No. 261.